1  Jack A. Raisner
   René S. Roupinian
2  **OUTTEN & GOLDEN LLP**
3  3 Park Avenue, 29th Floor
   New York, New York 10016
4  Ph: (212) 245-1000
   Fax: (212) 977-4005
5  Attorneys for Plaintiffs and the Putative Class

6  Christopher H. Bayley
7  **SNELL & WILMER, L.L.P.**
   One Arizona Center
8  400 E. Van Buren
   Phoenix, AZ 85004-0001
9  Ph: (602) 382-6214
   Fax: (602) 382-6070
10 Attorneys for First Magnus Capital, Inc. Liquidating Trust

11          **IN THE UNITED STATES BANKRUPTCY COURT**
               **FOR THE DISTRICT OF ARIZONA**
12

13 In Re:

14 FIRST MAGNUS CAPITAL, INC.,                  Chapter 11
                                                Case No. 08—bk-01494-GBN
15           Debtor.

16 JENNIFER BINFORD, SHEILA HART,      **JOINT MOTION FOR AN ORDER (A)**
   SUSAN HOWARD, JENNIFER            **CERTIFYING WARN ACT CLASS;**
17 HURTADO, SHEILA LOEBS, KELLY       **(B) APPOINTING CLASS**
   PLUMMER, TIRZAH ROLLE and          **REPRESENTATIVES AND CLASS**
18 TAWANA WRIGHT, on behalf of        **COUNSEL; (C) PRELIMINARILY**
   themselves and all others similarly situated,  **APPROVING SETTLEMENT**
19                                    **AGREEMENT RESOLVING WARN**
                                      **ACT CLAIMS; (D) APPROVING THE**
20           Plaintiffs.             **FORM AND MANNER OF NOTICE TO**
                                      **CLASS MEMBERS OF THE PROPOSED**
21                                    **SETTLEMENT; AND (E) SCHEDULING**
                                      **A FINAL FAIRNESS HEARING FOR**
22                                    **APPROVAL OF THE SETTLEMENT**
                                      **RESOLVING WARN ACT CLAIMS**
23 v.
                                      Date: _____, 2009
24                                    Time: _____, P.M.
   FIRST MAGNUS CAPITAL, INC.,        Location:    230 N. First Ave.
25                                                7th Floor, Courtroom 702
             Defendant.                          Phoenix, AZ 85003
26
                                      **Related DE(s): _____**

NOTICE IS HEREBY GIVEN that Grant Lyon, Liquidating Trustee for the First Magnus Capital, Inc. Liquidating Trust (the "FMCI Liquidating Trust," "FMCI Liquidating Agent," or "Defendant"), and Plaintiffs Jennifer Binford, Sheila Hart, Susan Howard, Jennifer Hurtado, Sheila Loebs, Kelly Plummer, Tirzah Rolle, and Tawana Wright, on behalf of themselves and all others similarly situated (collectively, the "WARN Claimants") hereby move this Court pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7023, for an order:

> (a)  certifying the WARN Act class (as defined herein) ("Class");
>
> (b)  appointing Plaintiffs as class representatives ("Class Representatives") and Plaintiffs' counsel as class counsel ("Class Counsel");
>
> (c)  preliminarily approving the settlement (the "Settlement") described in the Compromise and Settlement Agreement (the "Settlement Agreement") including the request for class representative service payments and for attorneys fees and expenses, attached hereto as Exhibit 1;
>
> (d)  approving the form and manner of notice to the members of the putative Class (as defined below); and
>
> (e)  scheduling a final fairness hearing to consider approval of the Settlement (the "Fairness Hearing") (collectively, the "Joint Motion").

Unless otherwise defined, capitalized terms used herein shall have the same meaning as defined in the Settlement Agreement.  As used herein, the "Parties" refer to the FMCI Liquidating Agent and the WARN Claimants.  In support of the Joint Motion, the Parties respectfully represent as follows:

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.  INTRODUCTION

1.  Plaintiffs Jennifer Binford, Sheila Hart, Susan Howard, Jennifer Hurtado, Sheila Loebs, Kelly Plummer, Tirzah Rolle, and Tawana Wright, on behalf of themselves and

similarly situated ex-employees of First Magnus, Capital, Inc. ("FMCI") and First Magnus Financial Corporation ("FMFC"), and the FMCI Liquidating Agent seek preliminary approval of the Settlement, which, *inter alia*, resolves Plaintiffs' claims for alleged violations of the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101, *et seq.*, shortly before FMFC filed for Chapter 11 bankruptcy on August 21, 2007. The WARN Act requires covered employers to give their employees 60 days' written notice before a mass layoff or plant closing. The Settlement Agreement resolves all of the Named Plaintiffs' and Class Members' WARN Act related claims against Defendant and FMFC in exchange for the payment of up to $5.5 million.

2.      The proposed Settlement and plan of distribution were the product of non collusive negotiations by informed counsel and fall well within the range of possible approval. It follows two years of hard-fought litigation in which the parties litigated, among other things, roughly 20 sets of motions and substantive objections, as well as appeals to the District Court and Ninth Circuit (pending).   Accordingly, Plaintiffs request that the Court: (1) preliminarily approve the Settlement; (2) certify named Plaintiffs Jennifer Binford, Sheila Hart, Susan Howard, Jennifer Hurtado, Sheila Loebs, Kelly Plummer, Tirzah Rolle, and Tawana Wright as Class Representatives of the Fed. R. Civ. P. Rule 23 WARN Act class; (3) make appropriate findings and certify the WARN Act Class for purposes of settlement; (4) appoint as Class Counsel René S. Roupinian and Jack A. Raisner of the firm Outten & Golden LLP; (5) approve, and direct mailing of, the proposed Class Notice (including notice of the right to opt-out of the Class); and (6) schedule a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the Class.

## II.      HISTORY AND STATUS OF CASE

3.      Until its Chapter 11 bankruptcy filings, FMCI and FMFC operated in the mortgage lending industry. Their corporate headquarters were located in Tucson, Arizona,

while other facilities were located in Arizona, Florida, Illinois, Texas and elsewhere. FMCI was FMFC's parent company. On or about August 16, 2007, FMFC ceased operations, terminating all of its employees, including Plaintiffs and the approximately 1,400 employees who would come within the proposed class definition. None of the terminated employees received 60 days written notice of their termination.

**FMFC Bankruptcy**

4. On August 21, 2007, FMFC filed in the United States Bankruptcy Court for the District of Arizona, Tucson division, a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code (Bankr. Case No. 07-01578, Docket No. 1). On August 29, 2007, Plaintiffs filed a Class Action Adversary Proceeding and an Amended Complaint (Adv. Proc. Case No. 07-00060, Docket Nos. 1, 4), alleging a single Rule 23 Class Claim for violations of the WARN Act. FMFC and FMCI were both named as Defendants under a theory of single employer liability.

5. On October 31, 2007, FMFC and FMCI each filed a Motion to Dismiss Complaint. (Adv. Proc. Case No. 07-00060, Docket Nos. 23, 24). FMCI moved to dismiss on the basis that the Bankruptcy Court had no subject matter jurisdiction over it as a non-debtor party. On November 30, 2007, the Plaintiffs moved to certify a class of the similarly situated former employees who were terminated in violation of the WARN Act. On January 10, 2008, the Bankruptcy Court entered an Order denying the Motion for Class Certification (Adv. Proc. Case No. 07-00060, Docket No. 36), upon which Plaintiffs filed a Notice of Appeal and Motion for Leave to Appeal (Bankr. Case No. 07-00060, Docket No. 40, 42).

6. On February 4, 2008, Plaintiffs and the WARN Claimants filed their Objection to Confirmation of FMFC's Second Amended Plan of Reorganization because it did not address the WARN Claims. As a result of the Objection, a reserve of approximately $1.9 million for the WARN claims was created in the FMFC reorganization plan. On February 6, 2008, the Bankruptcy Court in Tucson issued a final order granting FMFC's and FMCI's

Motions to Dismiss (Bankr. Case No. 07-01578, Docket No. 1236; Adv. Proc. Case No. 07-00060, Docket Nos. 49, 50, 51, 54, 67). On February 15, 2008, Plaintiffs filed an Amended Notice of Appeal of the Order granting dismissal (Adv. Proc. Case No. 07-00060, Docket Nos. 62-70).

7. After the Court denied class certification, Plaintiffs filed individual proofs of claim for approximately 264 former employees who had been putative class members. Plaintiffs also filed a Class Proof of Claim. The FMFC Liquidating Trustee filed objections to the individual proofs of claim and the class proof of claim creating contested matters, to which Plaintiffs filed Responses in Opposition to those objections. All 264 individual matters are currently pending. Presumably scheduling orders will issue permitting the parties to engage in discovery.

8. On March 31, 2008, Plaintiffs filed a Motion on Behalf of Certain Former Employees of FMFC for Allowance and Immediate Payment of Administrative Expense Portion of WARN Act Wages and Benefits Pursuant to 11 U.S.C. Sec. 503(b)(1)(A)(ii) (the "Motion for Administrative Priority Status"; Bankr. Case No. 07-01578, Docket No. 1995). On June 20, 2008, the Bankruptcy Court issued a final Order denying Administrative Expense Status for Plaintiffs' WARN Act claims (the "Order Denying Administrative Claim Status"; 390 B.R. 667 (Bankr. D. Ariz. 2008); Bankr. Case No. 07-01578, Docket Nos. 3015, 3676; District Ct. Case No. 08-00078, Docket No. 19), which Plaintiffs also appealed to the United States District Court for the District of Arizona, seeking an appeal of the Order Denying Administrative Claim Status (Dist. Case No. 4:08-cv-00409, Docket No. 1).

9. On March 31, 2009, the District Court upheld the Bankruptcy Court's dismissal of the adversary proceeding, denial of class certification, and denial of administrative priority status for Plaintiffs' WARN claims. (Dist. Case No. 4:08-cv-00135, Docket No. 33). On May 1, 2009, Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit. That appeal is currently pending.

10.      On April 15, 2009, the FMFC Liquidating Trustee filed Eight Omnibus Objections to Plaintiffs' individual proofs of claim (Bankr. Case No. 07-01578, Docket Nos. 5704, 5708, 5713, 5716, 5720, 5725, 5728, 5731) as well as an Objection to the Class Proof of Claim (Bankr. Case No. 07-01578, Docket No. 5556). Plaintiffs filed Responses in Opposition to the Liquidating Trustee's Objections Bankr. Case No. 07-01578, Docket Nos. 5872, 5874, 5918). Those objections are currently pending.

11.      On June 30, 2009, the WARN Claimants moved to stay the FMFC proceeding pending the outcome of the appeal in the Ninth Circuit, which was denied on August 12, 2009.

**FMCI Bankruptcy**

12.      On February 19, 2008, FMCI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On May 29, 2008, FMCI filed its Plan of Reorganization.  On July 28, 2008, this Court approved the Plan of Reorganization.   The Plan of Reorganization provided for Claimants to be treated in a class designated as Class 1 and/or 2 if their claims are determined to be valid. On September 12, 2008, FMCI submitted a "First Amended Plan of Reorganization Dated September 12, 2008."  The Amended Plan of Reorganization did not change or otherwise affect Plaintiffs' treatment as Class 1 and/or Class 2 claimants.   On September 25, 2008, the Court entered an order confirming the Amended Plan of Reorganization. On October 14, 2008, the WARN Claimants filed a motion in this Court seeking relief from the stay to pursue the WARN claims against FMCI in this Court and in the FMFC Court.

13.      On November 24, 2008, Plaintiffs, by their counsel, filed a Class Proof of Claim and amended that claim on June 10, 2009, (the "Class Claim") providing for claims against FMCI and FMFC on behalf of certain named former employees of FMCI and FMFC and those "similarly situated employees" pursuant to Rules 23(a), (b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure, Bankruptcy Rule 7023 and 29 U.S.C. § 2104(a)(5).   In the Class Claim, Plaintiffs estimated there were approximately 1,000 Class Claimants who worked at

one of eligible facilities located throughout the United States, including, but not limited to, Austin, TX, Scottsdale, AZ, Tucson, AZ, Ft. Lauderdale, FL, Maitland, FL, and Oakbrook Terrace, IL, and who would come within the proposed class definition.

14. The Class Claim asserts that the Plaintiffs and the other Class Claimants constitute a class within the meaning of Fed. R. Civ. P. 23(a), (b)(1)(B) and 23(b)(3) and Bankruptcy Rule 7023.

15. On or about April 16, 2009, FMCI Liquidating Agent filed an Objection to the Class Proof of Claim, to which Plaintiffs opposed. In its Objection, FMCI Liquidating Agent asserts that Plaintiffs should have submitted a Rule 2019 statement establishing their authority to file their proof of claim on behalf of the putative class, and that the FMCI Liquidating Trust and the FMFC Liquidating Trust are not liable as a single employer for WARN violations. That objection is currently under review.

16. On May 15, 2009, at a status hearing on the Objection to the Class Proof of Claim, the Court ordered, pursuant to the parties' Case Management Plan, that Plaintiffs file their Motion for Class Certification by June 12, 2009, and set a date for oral argument of that motion.

17. On June 12, 2009, Plaintiffs moved for class certification and related relief. The FMCI Liquidating Agent filed a response in opposition to Plaintiffs' motion. The Parties agreed to hold Plaintiffs' motion in abeyance, pending final approval of this settlement.

**The Settlement Negotiations**

18. The Parties, along with representatives from the FMFC Liquidating Trust and FMFC Litigation Trust, took part in a full day of mediation on July 17, 2009, presided over by Roxann Ashe, Esq. under the auspices of the U.S. Court of Appeals for the Ninth Circuit. The Parties engaged in extensive discovery in connection with the mediation, including the production of payroll information, determination of the scope of the class and a WARN damages analysis. In addition, Plaintiffs' counsel prepared a lengthy mediation brief for use by

the mediator in evaluating the case for settlement. Plaintiffs' counsel spent extensive time reviewing the payroll database produced by FMFC and, through extensive consultations and meetings with Plaintiffs, developed a damages model to evaluate FMCI's and FMFC's exposure for WARN damages and other elements of possible recovery

19. The mediation continued over several telephone sessions after July 17, 2009, and, through further settlement negotiations over the course of August and September, culminated in a settlement in principle on or about September 16, 2009.

## III. SUMMARY OF SETTLEMENT TERMS

20. The Parties memorialized the terms of their agreement in the Settlement Agreement. In general, the Settlement Agreement provides for Class Members to share on a pro rata basis a $5.5 million allowed priority claim in a global settlement of the WARN claim.

21. Essential terms of the Settlement include the following:

(A) the FMCI Liquidating Trust consents to certification of the class for purposes of settlement. The class shall consist of all eligible WARN claimants employed at the locations identified on the list of qualifying locations attached to the Settlement Agreement. The class is defined as those employees who worked at or reported to one of the Qualifying Locations (as such term is defined in the Settlement Agreement) and were terminated without cause on August 16, 2007, within 30 days of August 16, 2007 or as the reasonably expected consequence of the mass layoffs or plant closings at Qualifying Locations that occurred on August 16, 2007 (the "Class");

(B) the FMCI Liquidating Trust and Plaintiffs will seek court-approval of an allowed class claim in the amount of $5.5 million in the above-referenced matter inclusive of all attorneys' fees and costs, if any, awarded by the Bankruptcy Court;

(C) Class counsel will determine the percentage amount of the settlement funds that will be distributed to Class members on an individualized basis;

(D) The amount of the gross claim allocated to each Class member will be derived from the settlement fund less $60,000 to be paid in the aggregate as service fees to the Class Representatives;

(E)     Class counsel is entitled to seek attorneys' fees in the amount of 33 1/3% of the settlement, inclusive of out of pocket expenses, and these fees shall be deducted from, and distributed contemporaneously with, each distribution of the settlement payments to the Class members;

(F)     Class Representatives shall each receive a one-time payment of $7,500 for their service on behalf of the Class members, and such payments shall be made in addition to the Class Representatives' individualized settlement amounts, if any;

(G)     Settlement Services, Inc. shall be appointed as the Qualified Settlement Administrator;

(H)     The FMCI Liquidating Agent shall make an initial payment of the settlement to the Qualified Settlement Administrator in the amount of $2.6 million, with $1.3 million to be funded by the FMCI Liquidating Trust and $1.3 million to be funded by the First Magnus Litigation Trust (the "FMFC Litigation Trust") pursuant to the terms of the Settlement Agreement;

(I)     the FMCI Liquidating Agent shall distribute all remaining liquid assets and other future recoveries of the FMCI Liquidating Trust (except as otherwise provided in the Settlement Agreement) to the FMFC Litigation Trust (70%) and Taberna Capital Management, LLC c/o The Bank of New York Mellon Trust Company, N.A., not in its individual capacity, but as Trustee under the Junior Subordinated Indenture with FMCI dated August 30, 2006, and as Property Trustee under the Amended and Restated Trust Agreement with FMCI dated August 30, 2006 (collectively "Taberna") (30%), and shall use $1.3 million from the distribution to the FMFC Litigation Trust to fund the FMFC Litigation Trust's portion of the initial payment referenced in (H) above;

(J)     the remaining $2.9 million owed to Plaintiffs shall be deferred and paid exclusively from any future gross recoveries in the matter styled *Lattig v. StoneWater Mortgage Corp., et al*, Adversary Proceeding No. 4:09-ap-00211-JMM (the "FMFC Insider Litigation"), currently pending in *In re First Magnus Financial Corporation*, Case No. 4-BK-07-01578-JMM, in the United States Bankruptcy Court for the District of Arizona (the "FMFC Bankruptcy Case") as follows:  30% of the first $5 million from any future gross recoveries in the FMFC Insider Litigation and 28% of the second $5 million from any future gross recoveries in the FMFC Insider Litigation;

(K)    the FMCI Liquidating Trust shall make an additional one-time payment to the Qualified Settlement Administrator to pay what, if any, taxes are owed by an "employer" on any actual amounts disbursed to Plaintiffs from the initial $2.6 million payment after attorneys' fees and costs, plus the costs for services and expenses of the Qualified Settlement Administrator, in an amount not to exceed $165,000;

(L)    the FMFC Litigation Trust shall make additional payments to the Qualified Settlement Administrator equal to the funds necessary to pay what, if any, taxes are owed by an "employer" on any actual amounts disbursed to Plaintiffs from any deferred payments arising from the payment of the $2.9 million after attorneys' fees and costs in an amount not to exceed $221,850;

(M)    the FMCI Liquidating Trust shall reserve $1 million for, *inter alia*, claims relating to tax liabilities as asserted by taxing authorities in Massachusetts, New Jersey, New York, Wisconsin, Georgia, and Ohio;

(N)    the FMCI Liquidating Trust has assigned all rights, claims, causes of actions, and interests it owns against former shareholders, directors, officers, and employees of FMCI and FMFC, or any of their spouses or affiliated entities (the "Insiders"), including, but not limited to, all claims that have been, could have been, or could be asserted by the FMCI Liquidating Trust in the action styled *Lyon v. Magnus Corp., et al*, Adv. Proceeding No. 2:09-ap-00102-GBN (the "FMCI Insider Litigation") in the above-referenced matter to Taberna which in turn has assigned all such claims to the FMFC Litigation Trust;

(O)    Plaintiffs further release and forever discharge the FMFC Liquidating Trust and its trustee and attorneys, from any and all causes of action arising out of or relating to the WARN Claims, the Individual WARN Claims, the WARN Reserve, the WARN Appeal, the FMFC Bankruptcy Case, and the FMCI Bankruptcy Case (as such terms are defined in the Settlement Agreement);

(P)    Upon approval of the Settlement Agreement, the WARN Reserve in the FMFC Bankruptcy Case (as such terms are defined in the Settlement Agreement) shall be deemed lifted or otherwise waived, and the FMFC Liquidating Trust shall be free and clear to utilize the funds previously subject to the WARN Reserve without recourse of any kind from any and all WARN Claimants;

(Q)    Upon approval of the Settlement Agreement, Plaintiffs shall dismiss or otherwise withdraw the WARN Appeal (as such term is

defined in the Settlement Agreement) with prejudice in its entirety; and

(R)   the FMCI Liquidating Trust shall promptly waive, withdraw, and otherwise take all necessary steps to release Claim No. 4551 in the FMFC Bankruptcy Case.

22.   The FMCI Liquidating Agent believes that the terms of the Settlement are well within the range of reasonableness and are in the best interests of the FMCI Liquidating Trust and its creditors, and should, therefore, be approved.

23.   The Plaintiffs, as proposed Class Representatives, and proposed Class Counsel believe that the Settlement is fair, reasonable and adequate to each of the Class Members.

**Manner of Notice of Settlement to Putative Class**

24.   The Parties request that upon preliminary approval of the Settlement, the Bankruptcy Court approve the mailing of notice of the proposed Settlement (the "Class Notice") to the last known address in the records of the FMCI Liquidating Agent or to any corrected address that the Parties may obtain for each of the prospective Class Members.  Class Counsel will access a national database of names and addresses for each of the prospective Class Members to which it subscribes to secure correct addresses for Class Notice that are returned.  The Class Notice will be promptly re-mailed to those corrected addresses for each of the prospective Class Members.  Federal Rule of Civil Procedure 23(c)(2)(B) requires that individual notice be provided to all class members who can be identified through a reasonable effort.  Many courts have found individual mailings to an individual's last known address to be appropriate.  *See, e.g., Medearis v. Oregon Teamster Employers Trust*, 2009 U.S.Dist. LEXIS 53453 at *14 (D. Oreg. June 19, 2009); *White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994).

25.   Class Counsel shall oversee the sending by first class mail to each Class Member's last known address a Class Notice indicating the following:

•   that the resolution of the WARN Claims in the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement shall be effective as to all Class Members who did not opt-out of the Class;

- the amount of the settlement and the method used to calculate individual class members' share under this Settlement;

- that such Class Member has the right to object to this Settlement in person, to retain counsel and be heard at the Fairness Hearing; and

- that all Released Claims of a Class Member (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

26. Included in the Class Notice will be instructions both on opting-out of this Settlement and objecting to it. If a Class Member wishes to opt-out and not participate in the Settlement, he or she must return the Opt-Out Form attached to the Notice, as directed in the Notice. Should a Class Member wish to object to the Settlement, as explained in the Notice, he or she will have the opportunity to appear and object.

**Jurisdiction and Venue**

27. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157, 1331 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 9019 and Civil Rule 23.

**IV. CERTIFICATION FOR SETTLEMENT OF THE WARN CLASS PROOF OF CLAIM UNDER RULE 23 IS APPROPRIATE**

28. Through this motion, the Parties jointly request the Court to make appropriate findings and to certify a Fed. R. Civ. P. 23 class represented by the Class Representatives, on behalf of themselves and similarly situated former employees of FMCI and FMFC, pursuant to the WARN Act.

29. Class certification requires that each of the four prerequisites for class certification set forth in Federal Rule of Civil Procedure 23, made applicable by Bankruptcy

Rule 7023, namely, Rule 23(a)(1), (2), (3) and (4), be satisfied and that, in addition, at least one of the subparts of Rule 23(b) -- here 23(b)(3) -- be satisfied. It is within the discretion of the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9014 to apply the class action procedures of Federal Rule of Bankruptcy Procedure 7023 (incorporating Federal Rule of Civil Procedure). *In re First Alliance*, 269 B.R. 428 (C.D. Cal 2001). Invoking Rule 7023 is proper under the circumstances of this case and well within the discretion of this Court, and as shown below, the prerequisites for class certification are clearly present in this action. *Id*. at 442-49.

**A.** **The Proposed Class Meets the Requirements of Rule 23(a).**

30. Federal Rule of Civil Procedure 23(a) provides as follows:

**Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

**1.** **The Numerosity Requirement is Satisfied.**

31. Federal Rule of Civil Procedure 23(a)(1) requires that the class sought to be certified be "so numerous that joinder of all members is impracticable." *Grays Harbor Adventist Christian School. v. Carrier Corp.*, 242 F.R.D. 568, 572 (W. D. Wash. 2007). Plaintiffs need *not*, however, show that the number is so large that it would be *impossible* to join every class member. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964); *Murray v. Local 2620, Dist. Council 57, AFSCME, AFL-CIO*, 192 F.R.D. 629, 631 (N.D. Cal. 2000). *See also*, 1 NEWBERG ON CLASS ACTIONS, § 3:4 at 230 (4th Ed. 2002) (It is important to remember that "[i]mpracticable does not mean impossible."). No specific number is needed to maintain a class action. *Brewer v. Salyer*, 2008 U.S. Dist. LEXIS 27424 at *6 (E.D.Cal. April 3, 2008); *Cypress v. Newport News Gen'l & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967). Courts have certified classes whose membership sizes range from less than one hundred to over one hundred thousand. *Id.*; *In re Verisign, Inc. Sec. Litig.*,

2005 U.S. Dist. LEXIS 10438 at *12 (N.D. Cal. January 13, 2005). Rather, an "application of the rule is to be considered in light of the particular circumstances of the case." *Cypress*, 375 F.2d at 653. Classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone." 1 NEWBERG § 3:5 at 248. Indeed, a class of approximately 1,400 claimants is clearly enough to satisfy Rule 23(a)(1). *See, e.g., In re Kaiser Group Int'l*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) (discussing the law of "numerosity" and finding that a class of approximately 47 members was sufficiently numerous to justify certification). Generally, a class of at least 40 members satisfies the numerosity requirement. *Brewer v. Salyer*, 2008 U.S. Dist. LEXIS 27424 at *6.

32.     In another WARN class action case, the Bankruptcy Judge stated:

> I would agree, at least with respect to the numerosity requirement, that 'the WARN Act seems particularly amenable to class litigation' given that its applicability is limited to companies which employ more than 100 employees and which lay off employees in groups of 50 or more. *See Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (citing 29 U.S.C. § 2101(a)(1) and finding numerosity met where class size of 127 employees was alleged). Here the alleged class size of 150 to 270 terminated employees clearly meets the greater-than-forty requirement of this circuit.

*In re Spring Ford Ind.*, 2004 Bankr. LEXIS 112 at *24 (Bankr. E.D. Pa., January 20, 2004); *see also Barajas, et al. v. Gonzalez, Inc. et al.*, U.S. Bankruptcy Court, District of Arizona, Adversary Proceeding No. 02-1389 (2002).

33.     Here, the WARN Class is clearly large enough to make joinder impracticable. The WARN Act Class comprises approximately 1,400 former First Magnus employees. WARN Act class action litigation typically involves claims brought by the former employees of an employer who number far less than the 1,400 former employees here. *See, e.g., Grimmer v. Lord Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996) (certifying class of 92 persons). Accordingly, Plaintiffs have satisfied the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1).

## 2.     Questions of Law and Fact Are Common to All Members of the Putative Class.

34.     Under Fed. R. Civ. P. 23(a)(2), Plaintiffs must show that there is a question of law or fact common to the class.   Where a common nucleus of operative facts exists, commonality is usually met.   *See Sorenson v. Concannon*, 893 F. Supp. 1469, 1479 (D. Or. 1994) (where system-wide procedures are at issue, commonality exists).

35.     Class relief is particularly appropriate when the issues involved are common to the class as a whole and turn on questions of law applicable in the same manner to each member of the class because in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen'l Tel. Co. v. Falcon,* 457 U.S. 147, 155 (1982), *quoting, Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979).

36.     Here, the Plaintiffs claim that they and the other former employees were terminated as part of a common plan stemming from the FMCI's and FMFC's decision as a "single employer" to discontinue business operations and close their facilities (as that term is defined under the WARN Act).   The factual and legal questions stem from a common core of facts regarding alleged actions of FMCI and FMFC, and a common core of legal issues regarding every Class Member's rights, alleged by Plaintiffs as follows:  (a) whether FMCI and FMFC employed more than 100 employees; (b) whether all the Class Members are protected by the WARN Act; (c) whether the Class Members were employees of FMCI and FMFC; (d) whether FMCI and FMFC discharged the Class Members on or within 30 days of August 16, 2007 and thereafter in connection with a mass layoff or plant closing; (e) whether the Class Members were "affected employees," as they lost their employment as a result of the mass layoff or plant closing; (f) whether FMCI and FMFC terminated the employment of the Class Members without cause; (g) whether FMCI and FMFC terminated the employment of the Class Members without giving them at least 60 days' prior written notice as required by the WARN

Act; (h) whether FMCI and FMFC acted as a "single employer" with respect to all the allegations involving the terminations on August 16, 2007; and (i) whether FMCI and FMFC failed to pay the Class Members 60 days' wages and benefits. As the Plaintiffs need only establish one common question of law or fact in order to meet the low threshold set by Rule 23(a)(2), Plaintiffs' above showing far surpasses what is required for class certification in that virtually *all* the issues are common to the Class and the only differences are minor, namely, the rate of pay of each individual Class Member and the date of each prospective Class Member's termination.

      **3.**     **The Claims of the Class Representatives are Typical of the Claims of the Class.**

    37.     Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The test of typicality is whether (1) other members have the same or similar injury, (2) the action is based on conduct which is not unique to the named plaintiffs, and (3) other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); 1 NEWBERG, *supra*, at § 3:13 at 326 (4th edition 2002) ("'[Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought'"). The question is whether the class representatives' claims have the same essential characteristics as the claims of the class at large. *Rivera v. Bio Engineered Supplements & Nutrition*, 2008 U.S. Dist. LEXIS 95083 at *17 (C.D. Cal. Nov. 13, 2008). If the elements of the cause of action to be proved by the representatives are the same as those of the class, the claim is typical. *Dura-Bilt Corp. v Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

    38.     Here, Plaintiffs, as the proposed Class Representatives, suffered the same type of injury as the rest of the proposed Class and there are no conflicts of interest between the proposed Class Representatives and the other Class Members. (See Plaintiffs' Declarations to

Plaintiffs' Motion for Class Certification and Related Relief, Doc. No. 227 ("Plaintiffs' Class Certification Motion"). The alleged failure by FMCI and FMFC to comply with the requirements of the WARN Act represents a single course of conduct resulting in injury to all Class Members including the Plaintiffs. Neither the Plaintiffs nor other Class Members received 60 days' notice or 60 days' wages and benefits, pursuant to the requirements of the WARN Act.

39. Thus, the factual situation of each of the Class Representatives and the legal theories upon which the action is grounded are not only typical of the entire Class, but are identical.

**4.** **The Plaintiffs Have and Will Fairly and Adequately Protect the Interests of the Class.**

40. Federal Rule of Civil Procedure 23(a)(4) provides that a class action is maintainable only if "the representative parties will fairly and adequately protect the interests of the class." This element requires a two-step analysis. First, the court must determine whether the named class representatives have interests that "are free from conflicts of interest with the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438 at *25. Second, the court must find that the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020.

41. The first element of Rule 23(a)(4) is met in this case because, as set forth above, no divergence exists between the interests of the proposed Class Representatives and the interests of the putative Class as a whole. The Class Representatives have no interests antagonistic to the interests of the proposed Settlement Class. As noted above, under the proposed Settlement, the Class Representatives will receive a supplemental service payment for their efforts on behalf of the Class. Other than these specific payments, all of the Class

members will receive a portion of the balance of the Settlement fund based on their compensation during the relevant time periods.

42. The second element of Rule 23(a)(4) is met because Plaintiffs have retained counsel who have represented plaintiffs in numerous WARN and other employment class actions are therefore "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974). Plaintiffs' Counsel's background can be summarized as follows:

- Jack A. Raisner is a partner in the New York based firm of Outten & Golden LLP and a member of the firm's Class Action Practice Group and co-chair of its WARN Act Class Action Practice Group and has extensive experience litigating plaintiff employment rights matters, with a focus on the prosecution of class action and impact litigation of employment discrimination and wage and hour claims.

- René S. Roupinian, of counsel to the firm and co-chair of its WARN Act Class Action Practice Group and a member of its Class Action Practice Group, has represented tens of thousands of former employees in more than 60 WARN Act cases, many of which were litigated in bankruptcy court, including *Barajas, et al. v. Gonzalez, Inc. et al.*, U.S. Bankruptcy Court, District of Arizona, Adversary Proceeding No. 02-1389 (2002). (*See* Roupinian Declaration to Plaintiffs' Class Certification Motion).

Accordingly, the four prerequisites of Rule 23(a) for Class certification are met in this action.

**B.** **The Proposed Class Meets the Requirements of Rule 23(B)(3).**

43. In addition to meeting the prerequisites for class certification under Rule 23(a), a class must meet only one of the three alternative requirements for treatment as a class action under Federal Rule of Civil Procedure 23(b). Here, the class meets the requirements of Federal Rule of Civil Procedure 23(b)(3).

44. Class Certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. at 573.

45.     Considerations of judicial economy and efficiency are of paramount importance and, where, as here, determination of the common, predominant issues shared by the Class Members will dispose of the matter, class certification should be ordered. *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995). *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438 at *32 ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."). A class action is the superior method of resolving this dispute because many of the claims are quite small, making individual lawsuits impracticable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) (reversing district court's denial of class certification in a WARN case); *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 574 (relatively small amount of individual damages weighed in favor of a finding that superiority under Rule 23(b)(3) was satisfied); *Eisen v. Carlisle & Jacquelin*, 391 F.2d at 566-567.     As shown above, common questions of fact and law overwhelmingly predominate over the minor questions affecting individual claims.

46.     In addition, Fed. R. Civ. P. 23(b)(3) requires that the Plaintiffs demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Winkler v. Dte, Inc.*, 205 F.R.D. 235, 245 (D. Ariz. 2001).   Four factors are set forth in Fed. R. Civ. P. 23 (b)(3) to guide the court's determination as to whether a class action is superior and whether issues of fact and law common to Class Members predominate over individual matters:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Grays Harbor Adventist Christian School. v. Carrier Corp*., 242 F.R.D. 574 (the fact that most class members were unaware that they had potentially suffered an injury suggests it is unlikely that individual members would want to control the litigation). Here, neither the Plaintiffs nor any of the other Class Members have an interest in individually controlling the prosecution of separate actions. To Plaintiffs' knowledge, no other litigation concerning the controversy has been commenced other than those referenced herein and resolved upon final approval of the Settlement. The class action device proposed here "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This action allows all of the Settlement Class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide. As in *Hanlon*, the alternative method of resolution is for each individual to bring a claim, each for a relatively small amount of damages. *See* 150 F.3d at 1023. These claims "would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id*. For this reason, a class action is the superior method of resolution.

47. There are no issues of manageability under the Settlement that would preclude class certification. As discussed below, the proposed plan of distribution and settlement process is efficient and manageable.

48. Finally, the difficulties in managing this litigation as a class action are few: the Class Members have been easily identified; the potential liability of FMCI and FMFC has been readily calculated; and there is but one combined course of conduct – that of FMCI and FMFC – to examine and adjudicate. *Id*.

49. Accordingly, the Class meets all of the criteria for certification and should be certified for purposes of effectuating the Settlement. *See Amchen Prod., Inc*., 521 U.S. at 620 (finding that because the court was certifying the action for settlement purposes only, it did not

need to determine whether the class would be manageable for litigation purposes). The parties,

therefore, respectfully request that the Court grant certification.

## V. THIS COURT SHOULD APPROVE THE SETTLEMENT UNDER BANKRUPTCY RULE 9019

### A. The Legal Standard for Approval of the Settlement Agreement.

50. The Ninth Circuit recognizes that Bankruptcy Rule 9019 authorizes a

bankruptcy court to approve a compromise or settlement after notice and a hearing. Fed. R.

Bankr. P. 9019(a). Section 105 of the Bankruptcy Code empowers a court to issue any order

that is "necessary or appropriate" 11 U.S.C. § 105(a).

51. Even though sufficient facts are needed to properly evaluate the reasonableness

of a proposed settlement, the Court is not required to hold a full evidentiary hearing or "mini-

trial" before a compromise can be approved. *In re Equa-Chlor LLC,* 2008 Bankr. LEXIS 1341

at *14 (W.D. Wash. April 29, 2008). Nor is the bankruptcy court required to determine that

the proposed settlement is the best possible compromise. *Hughes v. Microsoft Corp.,* 2001

U.S. Dist. LEXIS 5976 at *28 (W.D. Wash. March 21, 2001) ("the appropriate inquiry for a

court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be

prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'") Rather,

the settlement should be approved as long as it does not fall below the lowest point in the range

of reasonableness. *In re Solafide, Inc.,* 2008 U.S. Dist. LEXIS 74851 at *4 (C.D. Cal.

September 22, 2008) *citing Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d

Cir.), *cert. denied,* 464 U.S. 822 (1983). In this respect, courts need not rule upon disputed

facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not

required." *In re Schmitt,* 215 B.R. 417, 423 (9th Cir. BAP 1997).

52. As articulated in *In re Woodson,* 839 F.2d 610, 620 (9th Cir.1988), Ninth

Circuit Courts consider the following four factors when determining whether a settlement is in

the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties,

1  if any, to be encountered in the matter of collection; (iii) the complexity of the litigation

2  involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the

3  paramount interest of the creditors and a proper deference to their reasonable opinions. *Reaves*

4  *v. Comerica Bank-Cal. (In re GTI Capital Holdings)*, 2008 Bankr. LEXIS 904 at *9 (Bankr.

5  Ariz. March 17, 2008).

6      **Application of the Woodson Factors**

7      1.      **The Results of a Trial are Uncertain and the Litigation is Complex.**[1]

8      53.      The results of a trial are uncertain and the litigation is complex.  The WARN

9  Action involves numerous legal issues regarding the application of the WARN Act and its

10  statutory and other legal defenses to complex facts.  These issues include, *inter alia*, (i)

11  whether FMCI and FMFC were a covered employer under the WARN Act at the time of the

12  alleged plant closings or mass layoffs pursuant to the liquidating fiduciary doctrine; (ii)

13  whether the WARN Notice provided adequate notice to the Class Members under the WARN

14  Act; (iii) whether the WARN Notice was defective under the WARN Act; (iv) whether FMCI

15  and FMFC were entitled to give fewer than sixty (60) days notice because of allegedly

16  unforeseeable business circumstances; (v) whether FMCI and FMFC were entitled to give

17  fewer than sixty (60) days notice because, at the time notice would otherwise have been

18  required, they were allegedly seeking new capital they reasonably believed, if obtained, would

19  have obviated the need for or substantially postponed the alleged plant closing or mass layoffs;

20  (vi) whether the alleged efforts to obtain new capital were commercially reasonable under the

21  circumstances; (vii) whether FMCI and FMFC have other defenses to the application of the

22  WARN Act; (viii) whether FMCI and FMFC gave "as much notice as practicable"; (ix)

23  whether FMCI and FMFC are  entitled to a defense of "good faith"; (x) the computation of the

---

[1] This section discusses both the first and third *Woodson* factors – uncertainty of success and complexity of litigation – because in this case, these issues are intertwined.  The second factor – difficulty with collection – does not apply because the Debtor is the defendant.

amount of damages; (xi) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative priority; (xii) whether the alleged damages are entitled to administrative priority under § 503(b)(1)(A)(ii) or wage or benefit priority under §§ 507(a)(4) or (5), respectively;[2] and (xiii) whether FMCI and FMFC constitute a "single employer" under the provisions of the WARN Act.

54.     Continued litigation would be costly and time-consuming and expose the FMCI Liquidating Trust to significant litigation risks.  Class Counsel has asserted that the FMCI LIQUIDATING Trust's WARN Act liability of sixty (60) days' damages and benefits is not less than $6.3 million and that may exceed $10.1 million not including attorneys fees.  The Settlement provides (i) for the creation of a Settlement Fund in the amount up to $5.5 million and (ii) that Class Members will share in the Fund on a pro rata basis.  The Settlement resolves the WARN Class Claim and related claims, including the Ninth Circuit appeal, and eliminates further accrual of the substantial litigation expenses which have been associated therewith. Accordingly, the Parties respectfully submit that approval of the Settlement is warranted.

**2.     <u>The Settlement is in the Best Interests of the FMCI Liquidating Trust.</u>**

55.     The Settlement is in the best interest of the FMCI Liquidating Trust's creditors. Although the Court will consider objections to the proposed settlement, satisfaction of the Woodson factors weighs heavily in favor of a finding that the settlement is in the best interests of the estate. *Reaves v. Comerica Bank-Cal. (In re GTI Capital Holdings)*, 2008 Bankr. LEXIS 904 at *10.

56.     The paramount interest of creditors and reasonable deference to their views favors approval of the Settlement Agreement.  The Liquidating Trustee and major creditors were intimately involved in the negotiation of the Settlement Agreement and fully support its

---

[2]  While the United States Bankruptcy Court for the District of Delaware has recently held that WARN damages resulting from pre-petition employment terminations are not entitled to administrative priority, but rather are treated as priority wage claims up to the cap of $10,950 and general unsecured claims thereafter, *see In re*

approval. Moreover, as set forth above, the Settlement Agreement spares the FMCI Liquidating Trust the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

57. Accordingly, in light of each of the relevant factors, the Settlement Agreement should be approved.

## VI. THE SETTLEMENT MERITS PRELIMINARY APPROVAL AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

### A. The Settlement Should be Preliminarily Approved.

58. Pursuant to Federal Rules of Civil Procedure, "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). Accordingly, the Court has authority to conduct a preliminary fairness review of a proposed class action settlement. *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal., September 3, 2008); *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 32.632 (2004). As part of a preliminary fairness review, the court must "make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" and "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

### B. The Settlement Should be Finally Approved at the Fairness Hearing.

59. Federal Rule of Civil Procedure 23 (e)(1)(C) provides that:

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

---

*Powermate*, 394 B.R. 765 (Bankr. D. Del. 2008), there is no Circuit authority on the issue.

60.     In *Hanlon v. Chrysler Corp.*, the Ninth Circuit articulated the seven factors that are to be weighed in determining whether a settlement should be approved as fair reasonable and adequate to class under Rule 23(e) as follows:

- The strength of the plaintiffs' case.

- The risk, expense, complexity, and duration of further litigation.

- The risk of maintaining class certification.

- The amount of settlement.

- The investigation and discovery that has taken place.

- The experience and views of counsel.

- The reaction of the class to the settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

61.     The Parties submit that not only should the settlement be approved pursuant to Bankruptcy Rule 9019 as set forth above, but that the Settlement should also be approved as fair, reasonable and adequate to the Class under the factors enumerated by the Ninth Circuit, for the following reasons:

- As set forth previously above, the litigation would have been complicated, protracted and expensive, thereby depleting the FMCI Liquidating Trust's assets and delaying and diminishing distributions to the creditors including Class Members holding pre-petition priority and unsecured claims.

- The Plaintiffs, as proposed Class Representatives, support the Settlement and proposed Class Counsel believes that the majority of the remaining potential Class Members will have a favorable reaction to the Settlement and will not object.

- The Settlement was reached after the Parties litigated approximately 20 different motions and objections, litigated an appeal to the District Court, and were preparing appellate briefs to the Ninth Circuit. It was reached after essential facts had been thoroughly investigated by Class Counsel and the exchange of legal and factual theories at mediation. The Settlement resulted only after extensive, arms-length settlement negotiations that were conducted after rigorous discovery regarding the scope of the class, discussion of the merits, and condition of the bankruptcy estates. The negotiations were protracted, and required a day of face-to-face mediation and multiple lengthy

sessions of informal negotiations in person and telephonically. In sum, the proposed Settlement is the non collusive product of hard-fought litigation.

• As set forth above, the risks of being unable to establish liability and damages were significant because of Plaintiffs' adversary class claims had been dismissed in the FMFC proceeding and were poised to draw opposition and defenses asserted by the FMCI Liquidating Agent.

• Since the FMCI Liquidating Agent is a bankruptcy trustee over the Liquidating Trust, even if the Class had prevailed at trial, they may not have received any recovery because of numerous factors including continuing administrative expenses. The Settlement assures payment to the Class.

• The Settlement is well within the range of reasonableness given the uncertainty of establishing liability and the ability to recover against a bankrupt employer.

For all these reasons, the Settlement should be approved as fair, reasonable and adequate to the Class.

**C.    Proposed Notice.**

62.    Upon entry of an order (i) certifying the Class, (ii) appointing Plaintiffs as Class Representatives and Plaintiffs' counsel Class Counsel; (iii) preliminarily approving the Settlement; (iv) approving the form and manner of notice to the members of the putative Class, and (v) scheduling a the Fairness Hearing, the Parties will cause notice of the proposed Settlement and the Fairness Hearing to be served upon the Office of the United States Trustee and all parties requesting notice of proceedings in the FMCI Bankruptcy Case pursuant to Bankruptcy Rule 2002.

63.    With regard to the members of the proposed Class, the Parties propose that the Notice of Class Certification of Proposed Settlement of Class Action and Fairness Hearing that is attached hereto as Exhibit 2 be served on all potential Class Members, and such notice shall comprise such notice to the Class Members as is necessary for approval of the Settlement.

64.    Plaintiffs further submit that service of the proposed Class Notice by first class mail, postage prepaid, to each prospective Class Member at each Class Member's last known address, is the best notice practicable under all the circumstances. Furthermore, while Federal

Rule of Civil Procedure 23, as adopted by Bankruptcy Rule 7023, does not impose a minimum notice period, the Parties have attempted to ensure that parties in interest in the FMCI Bankruptcy Case and all potential Class Members receive a minimum of 20 days notice of the Fairness Hearing, as required under Bankruptcy Rule 2002.

65. Federal Rule of Civil Procedure 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the Court must determine the best notice practicable under the circumstances, including individual notice to potential class members and that the notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues or defenses,

- that a class member may enter an appearance through counsel if the member so desired,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Rule 23(c)(2)(B). *See also, Hunt v. Check Recovery Sys., Inc.*, 2007 U.S. Dist. LEXIS 58800 at *5 (N.D. Cal. July 25, 2007).

66. Although no rigid standards govern the contents of notice to Class Members, the notice must "clearly and concisely state in plain, easily understood language" each of the above listed contents. *Medearis v. Oregon Teamster Employers Trust*, 2009 U.S.Dist. LEXIS 53453 at *10; *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), cert. denied, 423 U.S. 864 (1975). Individual mailings to each potential Class Member's last known address is appropriate. *See, e.g., White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994); *Weinbarger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1983).

67.     Here, the contents of the proposed Class Notice are sufficient.  The Class Notice summarizes the nature of the pending WARN Act litigation and apprises the proposed Class, among other things, of the Class definition, of the claims, issues and defenses, that complete information regarding the action is available upon request from Class Counsel, that any Class Member may opt-out of the Class, that if they do not opt-out, they will be bound by any judgment or settlement in the litigation and that if they do not opt-out, they may appear by their own counsel.  In short, the proposed Class Notice satisfies all the requirements of Rule 23(c)(2)(B).

68.     In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

69.     No previous application for the relief sought herein has been made to this or any other court.

**D.      Payments to the Named Plaintiffs For Their Service to the Class Are Reasonable and Routinely Awarded.**

70.     The Settlement provides for payments of $7,500 to each of the eight Class Representatives who were named in the Complaint (that is, Jennifer Binford, Sheila Hart, Susan Howard, Jennifer Hurtado, Sheila Loebs, Kelly Plummer, Tirzah Rolle, and Tawana Wright). The service payments are intended to recognize the time and effort the Class Representatives expended on behalf of the Class, as well as the risks they incurred during the course of this litigation.  Indeed, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).  In *Coca-Cola*, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-*

*Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

71.     In this case, all of the Class Representatives performed important services for the benefit of the class.  In addition to their incurring the risks inherent in serving as named plaintiffs, they provided information during many interviews regarding the structure of the company, the jobs and compensation of themselves and others, the physical locations they worked at and other locations they were aware of, the integration of the companies and their businesses, and the events surrounding their termination and demise of the company. They produced relevant documents, and they worked with Plaintiffs' counsel throughout the case. Accordingly, the $7,500 payments (for a total of $60,000) are appropriate and justified as part of the overall Settlement in light of their services to and risks taken on behalf of the Class.[3] Moreover, FMCI does not oppose this proposed award of service payments to the Class Representatives.

**E.     Under The Settlement Agreement, Settlement Class Counsel Is Entitled To A Reasonable Fee Of One Third Of The Settlement Proceeds.**

72.     Lead counsel for a class is entitled to be paid a fee out of the common fund created for the benefit of the class. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (The Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a result of their efforts); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984) (Calculation of fees based on the common-fund doctrine is based on a percentage of the common fund recovered). An award of

---

[3]  In addition to their service payments, the Class Representatives will be authorized to participate in the settlement as Class Members.

attorney fees is committed to the sound discretion of the district court. *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex.*, 2005 U.S. Dist. LEXIS 13627 at *25 (C.D. Cal. June 10, 2005).

73.     Although the Ninth Circuit has established 25% of the common fund as the "benchmark" award for attorney fees, courts have adjusted percentage upward to 33% of the settlement proceeds. *Id.* (awarding a one-third attorneys' fee of over $9 million from common fund of over $27 million); *see also Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1116-7 (C.D. Cal. April 1, 2008)(in awarding plaintiffs' counsel $ 6.3 million, court found reasonable a multiplier of approximately 5.2 over plaintiff's counsel's lodestar of $1.2 million lodestar) in award plaintiffs' counsel $ 6,375,000). Although not mandated by the Ninth Circuit, courts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar. *In re. Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) (court exercised discretion to award 1/3 of the class fund as a fee). All of the six factors weigh in favor of granting approval of Class Counsel's attorneys' fees and expenses.

## 1.     <u>Result obtained for the class.</u>

74.     The Supreme Court has recognized that in making a fee award the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

75.     Here, the settlement provides substantial monetary benefits to each Class Member. Class Members stand on average to receive more than $2,600 in settlement of their alleged WARN damages, roughly between 30%-50% of their total damages. In light of the legal and factual complexities of this case, there is no doubt that this is a extremely favorable settlement for Class Members.  In a bankruptcy case such as the one underlying this class proof

1   of claim settlement, the risk of insolvency or insurmountable objection from other creditors is

2   often more than a mere possibility. The genuine disagreement between the parties over the

3   issue of FMCI's and FMFC's liability under the WARN Act also increased the likelihood that

4   any verdict would be taken up on appeal, in addition to the issues already on appeal, thereby

5   additionally increasing the time and expense required to resolve this case.

6       76.     Although Plaintiffs believe that their claims have merit, they recognize that they

7   would face significant legal, factual, and procedural obstacles to recovering damages on those

8   claims. In this case, the FMFC WARN Class claims, including class certification, the adversary

9   proceeding and administrative expense treatment were dismissed in the FMFC bankruptcy

10  against Defendant and FMFC.  The decisions were affirmed by the United States District Court

11  for Arizona.  These WARN claims stand in queue at the Ninth Circuit to be heard two years

12  hence, by which time the FMCI and FMFC estates may well be depleted of assets, leaving the

13  Plaintiffs with little chance of monetary recovery.

14      77.     Notwithstanding these circumstances, the Settlement provides up to $5.5 million

15  toward compensating Class Members for their damages and efforts in the litigation.

16      78.     By any measure, the relief obtained is substantial.  Class Counsel's success in

17  obtaining a settlement agreement that provides for an immediate initial payment, as well as an

18  amount to be paid out of what is recovered in litigation, to every Class Member who has not

19  opted out, clearly satisfies this factor

20      **2.    <u>Effort expended by counsel.</u>**

21      79.     Although Class Counsel was successful in achieving an excellent result in this

22  litigation, a substantial amount of time and energy was required nonetheless.  In the course of

23  the litigation, Class Counsel made several appearances before the Court for pretrial and status

24  conferences. The parties engaged in extensive motion and appellate motion practice, on the

25  issue of class certification, the motions to dismiss, and objections to the proofs of claim.

26  Following a review and analysis of the documents exchanged in informal discovery and

applicable law, the parties concluded that in order to avoid the cost and uncertainty of lengthy litigation and the delay incident to that litigation, it was in the best interests of the FMCI Liquidating Trust, its creditors and the Class to seek to effect a settlement of the WARN claims on behalf of the members of the Class. The settlement negotiations between FMCI Liquidating Agent, the FMFC Litigation Trustee, and Class Counsel were protracted and conducted in good faith and at arms' length. These negotiations involved the exchange of their respective legal theories and research, hours of mediation, and the exchange of a multitude of settlement proposals before an agreement was ultimately reached.

80.     After reaching agreement on the terms of the Settlement, Class Counsel took on the role of drafting the Joint Motion for the Preliminary and Final Approval of the Settlement, the Notice to the class of the proposed settlement, the compiling and vetting of the list of Class Members, and a proposed order preliminarily approving the Settlement as to the Class.

81.     The requested attorney fee is not based solely on time and effort already expended; rather, it is meant to compensate Class Counsel for all of the time Class Counsel has spent and will be required to spend overseeing the administration of the settlement.  It has been the experience of Class Counsel that administering class settlements of this nature and size require a substantial and ongoing commitment of time.  For example, many of the class members who will receive notice of the litigation and the proposed Settlement will have questions regarding the terms of the Settlement and their inclusion in the proposed class.

**3.     Counsel's experience and skill.**

82.     Here, Class Counsel has managed the litigation in a disciplined and pragmatic fashion confirms that this litigation was ably prosecuted for the benefit of the Class. The litigation required considerable skill and experience to successfully conclude. Class Counsel in this case has substantial experience in prosecuting large scale class and collective actions on behalf of employees and, specifically, WARN Act class actions such as this one.  Jack A. Raisner, a partner in the New York-based firm of Outten & Golden LLP, a member of the

firm's Class Action Practice Group and co-chair of the firm's WARN Act Class Action Practice Group, has extensive experience litigating plaintiff's employment rights matters, with a focus on the prosecution of class action and impact litigation of employment discrimination and wage and hour claims. René S. Roupinian, Of Counsel, and a partner-elect of Outten & Golden LLP and co-chair of the firm's WARN Act Class Action Practice Group and a member of its Class Action Practice Group, has represented tens of thousands of former employees in more than 60 WARN Act cases, many of which were litigated in bankruptcy court.

83. Class Counsel was retained by the Class Representatives based on their experience, expertise, and willingness to expend the time necessary to effectively litigate this case. Class Counsel has been consistently retained in other WARN class actions by thousands of Plaintiffs in every circuit of the United States. The paucity of expert WARN counsel implies few, if any, other counsel have the skill, experience and expertise required to handle such cases. These facts amply support a finding that this factor is satisfied.

84. The amounts allocated to each Class Member are significant. Some Class Members stand to receive more than $2,600 in settlement of their alleged WARN damages. In light of the legal and factual complexities of this case, there is no doubt that this is an extremely favorable settlement for Class Members. The fact that these substantial amounts are available to Class Members without the uncertainty of trial, and are being delivered through this expeditious settlement rather than another year of litigation and appeal, qualifies the results of this settlement as excellent under any reasonable assessment.

85. As shown by the very favorable settlement of this matter achieved in the face of the difficult liability issues, Class Counsel provided legal services with considerable skill. The services were rendered with efficiency, in light of the complexity of the issues, the difficulty of addressing the several defenses, and the need for discovery.

### 4. **Complexity of the issues.**

86.     As to the size of the class and the recovery, the proposed settlement is favorable to the Class given the complexity of the issues involved.   This case was complex because it involved mixed questions of fact and law, a litany of parties, and numerous retail and wholesale office locations.

87.     When a case involves questions of both fact and law, the case is inherently more complex and weighs in favor of granting the requested attorneys' fees.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D. N.Y. 2005) (noting that mixed questions of fact and law increase the complexity of a case).  Finally, this case also involved various complex issues on appeal, such as whether Plaintiffs' claims are entitled to administrative priority status under the revised Bankruptcy Code, and whether the bankruptcy claims process was a superior means of resolving the WARN claims, as opposed to the adversary proceeding process.

### 5. **The risks of non-payment assumed by counsel.**

88.     Plaintiffs bore the burden of ultimately demonstrating to the Court that a group of employees existed with common questions of law and fact such that the case could be maintained as a Rule 23 class action.   The FMCI Liquidating Agent disputed Plaintiffs' material factual allegations contained in the Complaint.

89.     Large-scale WARN Act cases of this type are, by their very nature, complicated and time-consuming.   Any lawyer undertaking representation of large numbers of affected employees in WARN Act actions inevitably must be prepared to make a tremendous investment of time, energy and resources.   Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.   Given the FMCI bankruptcy, there is an overarching and very real possibility that Class Counsel would prevail on liability, be awarded an allowed claim, which would be uncollectible because the estate would lack sufficient assets to pay even a portion of the claims.   The demands and risks of this type of

litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.

90.     The risk of non-payment at the outset was very substantial as it was not known at that time whether a class would be certified and whether there would be sufficient funds available to pay these claims. In addition, the risk of non-payment was increased by the defenses that the FMCI Liquidating Agent asserted.

91.     Class Counsel stood to gain nothing in the event the case was unsuccessful.  The fact that more than half of the settlement will be funded from litigation, is further support for the substantial risk of non-payment had the litigation continued.  Class Counsel continues to bear the risk that its fees will not be fully paid given most of its fees will come from funds not yet collected by the FMFC Litigation Trust, themselves remain contingent. The fact that the payment of most of the awarded fees depends on the collection of future funds would further deter many traditional class action firms from prosecuting this case.  Class Counsel will continue to incur substantial attorneys' fees and expenses over time, as the Settlement is funded, and it oversees the distribution of proceeds to the Class Members, and handles their questions and issues. Because the attendant risk has always been on, and still rests in its entirety on, Class Counsel, the Court should grant the requested attorneys' fees.

**6.     The reaction of the class.**

92.     The reaction of the class can be ascertained through the number of opt-outs or objections received following notice to the class.  *Craft v. County of San Bernardino*, 624 F. Supp. 2d at 1122.   A low number of opt-outs or objections provides a fairly objective indication that the proposed settlement is fair and reasonable. Although Class Notice has not been mailed out, pending preliminary approval of the settlement, Class Counsel anticipates that minimal number of opt-outs or objections, given that the size and terms of the settlement are favorable to Class Members. For this reason, the Court should find that this factor is satisfied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CONCLUSION

WHEREFORE, the Parties respectfully request that this Court: (a) enter an order in substantially the form attached hereto as Exhibit 3: (i) certifying the Class; (ii) appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (iii) preliminarily approving the Settlement; (iv) approving the form and manner of notice to the members of the putative Class; (v) preliminarily approving Class Counsel's request for attorneys fees and expenses (vi) and scheduling the Fairness Hearing; (b) schedule a fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the members of the Settlement class; and (c) enter an order in substantially the form attached hereto as Exhibit 4 finally approving the Settlement and approving proposed Class Counsel's request for fees and expenses; and (d) grant such other relief as may be just and proper.

Dated: October 28, 2009                        Respectfully submitted,

                              By:    /s/ Jon Saffer
                                     Jon Saffer
                                     Christopher H. Bayley
                                     **SNELL & WILMER, L.L.P.**
                                     One Arizona Center
                                     400 E. Van Buren
                                     Phoenix, AZ 85004-0001
                                     Attorneys for First Magnus Capital, Inc.
                                     Liquidating Trust

                              By:    /s/ René S. Roupinian
                                     Jack A. Raisner
                                     René S. Roupinian
                                     **OUTTEN & GOLDEN LLP**
                                     3 Park Avenue, 29th Floor
                                     New York, New York 10016
                                     Ph: (212) 245-1000
                                     Fax: (212) 977-4005
                                     Attorneys for Plaintiffs and the Putative
                                     Class